IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SOLES4SOULS, INC.            )
                             )
v.                           )     No. 3:08-1188
                             )     Judge Campbell/Bryant
GLEANING FOR THE WORLD, INC., et al.  )

To:   The Honorable Todd J. Campbell, Chief Judge

## REPORT AND RECOMMENDATION

Currently pending in this civil action are plaintiff Soles4Souls, Inc.'s three motions for default judgment, against individual defendants James Brooks (Docket Entry No. 106), Avie Cohen (Docket Entry No. 107), and Claude Halcomb (Docket Entry No. 114). These motions have been referred to the undersigned for report and recommendation as to disposition. (Docket Entry No. 119) As further explained below, the undersigned recommends that these motions be GRANTED IN PART as to these defendants' liability, and DENIED IN PART as to the requested award of damages. Should this recommendation for disposition be adopted and approved, it is further recommended that the matter be returned to the Magistrate Judge for further proceedings to determine appropriate damages.

## I. Background

As pertinent to defendants Brooks, Cohen, and Halcomb, the following allegations of the amended complaint frame the matters at issue on these motions for default judgment:

13. Soles4Souls accepts donated shoes and distributes them to people in

need throughout the world.

\* \* \*

17.  On or about October 10, 2007, Soles4Souls received approximately 16,000 pairs of donated shoes from Minnetonka Moccasin Co., Inc. Soles4Souls agreed that the shoes would be distributed to people in need in Africa, and that the shoes would not be sold or transferred for value.

18.  Soles4Souls contacted Gleaning and the parties agreed that Gleaning would distribute the donated shoes in Africa. Accordingly, Soles4Souls sent the donated shoes to Gleaning in Concord, Virginia, for distribution in Africa.

19.  In the fall of 2007, Claude Halcomb contacted James Hughes and asked if Mr. Hughes would contact Gleaning and obtain shoes for Claude Halcomb, Judy Halcomb and James Brooks through Brooks' entity, Helping Hands. There was an understanding that Hughes would be compensated for his efforts.

20.  Hughes negotiated a deal for the shoes between himself, For The Kids and Gleaning, on behalf of Brooks, Helping Hands and Claude and Judy Halcomb.

21.  Hughes took money from his father and from Hughes' alleged non-profit entity, For The Kids, paid Gleaning $21,000.00 for the shoes, and shipped them to a warehouse leased by For The Kids in Cleveland, Tennessee.

22.  Gleaning subsequently sold or otherwise transferred the shoes to For The Kids and James Hughes on behalf of Brooks, and Claude and Judy Halcomb, without notice to or consent from Soles4Souls.

23.  For The Kids, by or through James Hughes, sold or otherwise transferred the shoes to James Brooks or persons associated with him without notice to or consent from Soles4Souls.

24.  For The Kids, by or through James Hughes, warehoused the shoes in Cleveland, Tennessee for approximately nine months.

25. While the shoes were warehoused, James Hughes allowed Claude Halcomb to come to Tennessee and take a truckload of some of the shoes back to Ohio, without notice to or consent from Soles4Souls.

26. On information and belief, Claude Halcomb sold or transferred some of the shoes he took from the warehouse in Cleveland, Tennessee, to his wife Judy Halcomb, and others who, on information and belief, sold some of the shoes at retail through flea markets and discount stores in Ohio and elsewhere.

27. While some of the shoes were warehoused, James Hughes allowed Avie Cohen to come to Tennessee and take a load of some of the shoes back to Illinois, without notice to or consent from Soles4Souls.

28. For The Kids, by or through James Hughes, sold or otherwise transferred most of the shoes to David Gault and Claude Halcomb, or persons associated with them, without notice to or consent from Soles4Souls.

29. Avie Cohen brokered the sale of the shoes from James Hughes and For The Kids to David Gault and received compensation for his services.

30. Avie Cohen received compensation of at least $6,500 from David Gault or persons associated with him for brokering the sale of the shoes to Jeanne S. Re.

31. David Gault or persons associated with him sold some of the shoes to Jeanne S. Re.

32. Jeanne S. Re or persons associated with her sold some of the shoes to online customers on [www.ebay.com.](www.ebay.com.)

33. Soles4Souls discovered that the shoes were being sold on the open market and subsequently purchased some of the shoes from Jeanne S. Re so that Soles4Souls could fulfill its obligations to Minnetonka, maintain its relationship with Minnetonka, and maintain its charitable objectives and reputation.

(Docket Entry No. 55 at 3-7)

For its causes of action against defendants Brooks, Cohen, and Halcomb,

plaintiff asserts (1) intentional interference with business relationship, (2) intentional interference with contractual relationship, and (3) civil conspiracy.

First, as against all three individual defendants, plaintiff claims that it had an existing business relationship with Minnetonka of which defendants were aware, and that these defendants "intentionally transferred some of the Minnetonka shoes for value, or caused some of the shoes to be transferred for value, with the intent to cause a breach or termination of Soles4Souls' agreement and relationship with Minnetonka." (Docket Entry No. 55 at 10-11, 12-13)  Plaintiff asserts that these defendants' actions are the proximate cause of plaintiff's damages, including but not limited to "the value of the shoes, the cost of re-purchasing some of the shoes, damage to its reputation, litigation expenses, and attorneys' fees." Id.

Second, as against all three individual defendants, plaintiff claims that it had a contractual relationship with Gleaning of which defendants were aware, and that these defendants "intentionally, and with malice, induced Gleaning to breach its contract with Soles4Souls." Id. at 16-19.  Plaintiff further claims that this conduct and Gleaning's resulting breach of contract are the proximate cause of plaintiff's damages, again described as including, but not limited to, "the value of the shoes, the cost of re-purchasing some of the shoes, damage to its reputation, litigation expenses, and attorneys' fees." Id.

Finally, as against all named defendants, plaintiff claims a civil conspiracy in which defendants "combined for unlawful purposes, including interference with a business relationship, conversion, fraud, breach of contract, and violations of the [Tennessee Consumer Protection Act]." Id. at 21.  Plaintiff claims that all defendants shared a common purpose, and that each knew of the others' intent.  Plaintiff thus claims damages proximately

caused by the existence of the conspiracy and the effectuation of its goal, including but not limited to the same harms listed as arising from its other claims. Id. Plaintiff has settled and dismissed all claims against defendant Gleaning for the World, Inc. (Docket Entry No. 179), and appears to have settled its claims against defendant Hughes and defendant For The Kids International, Inc. (Docket Entry No. 165)

Defendant Halcomb has not appeared or responded in any fashion to the original or amended complaints against him. Defendants Brooks and Cohen have likewise failed to appear or file any responsive pleading, though both have separately written letters to the court disclaiming their culpability in the matter, and stating that they lack the resources or wherewithal to make an appearance in this court. (Docket Entry Nos. 94 & 103) Upon plaintiff's submission of properly supported applications for entry of default, the Clerk of Court, pursuant to Fed.R.Civ.P. 55(a), entered default against defendants Brooks and Cohen on April 23, 2010 (Docket Entry No. 90), and against defendant Halcomb on July 12, 2010 (Docket Entry No. 112). Plaintiff thereafter filed the instant motions for default judgment pursuant to Rule 55(b), and these motions are ripe for adjudication.

## II. Conclusions of Law

Upon entry of default, the complaint's well pleaded allegations pertaining to liability are taken as true. In re Family Resorts of America, Inc., 1992 WL 174539, at *4 (6th Cir. July 24, 1992). However, unliquidated damages must still be proven. Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110 (6th Cir. 1995). "Proof of damages ordinarily requires an evidentiary hearing in which the defendant may contest the amount, but a hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to

5

establish the amount of damages." Broadcast Music, Inc., v. Marler, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009). In support of its three motions, plaintiff submits the affidavit of its Chief Financial Officer, Kevin Goughary, who was personally involved in, and aware of, the circumstances giving rise to this lawsuit. (Docket Entry No. 106-1 at ¶ 2) Mr. Goughary testified as follows:

> 3. As a result of the Defendants' actions, Soles4Souls has incurred substantial damages. The shoes that were wrongfully taken or converted by the Defendants were donated to Soles4Souls for distribution to needy people. Once we learned from Minnetonka Moccasins, our donor, that the shoes at issue in this case were being sold to the public on eBay and other sources, Soles4Souls made every effort to recover the shoes and redirect them to those in need in order to protect and maintain our relationship with the donor as well as benefit the intended recipients.
>
> 4. We learned that some of the shoes were located in the Cincinnati, Ohio, area. After discovering this fact, we made arrangements to reacquire them. Soles4Souls was only able to recover a portion of the shoes, approximately 5,500 pairs. In order to do so, we were forced to purchase these shoes from Frank and Jeanie Re for the amount of $28,000. Mr. and Mrs. Re had purchased the shoes in good faith from Defendant David Galt. In the process of investigating and attempting to retrieve the shoes, Soles4Souls incurred expenses for travel, shipping, etc. in the amount of $1,928.00.
>
> 5. We were unable to recover 10,000 pairs of the shoes that were wrongfully taken or converted by the Defendants. The wholesale value of the shoes that we were unable to recover is $400,000.00.
>
> 6. Soles4Souls has also incurred attorneys' fees in this matter in the amount of $95,000.00 to date.

(Docket Entry No. 106-1)

First, as to liability, the undersigned finds that the well pleaded allegations of plaintiff's amended complaint (Docket Entry No. 55, ¶¶ 19-26, 28) establish the liability of defendants Brooks, Cohen, and Halcomb for civil conspiracy. "An actionable civil

conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff. Upon a finding of conspiracy, each conspirator is liable for the damages resulting from the wrongful acts of all co-conspirators in carrying out the common scheme." Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 703 (Tenn. 2002). These elements of this tort are established in the assumed truth of the amended complaint's allegations against these defendants -- that they conspired, along with the other defendants, to profit from Minnetonka's charitable donation at the expense of plaintiff's good will and reputation, as well as at the expense of the needy, intended beneficiaries of the donation. Cf. generally Tempur-Pedic Int'l, Inc. v. Waste To Charity, Inc., 483 F.Supp.2d 766 (W.D. Ark. 2007) (granting motion for injunctive relief, district court found that unauthorized sale for profit of items donated to assist victims of Hurricane Katrina jeopardized donor's good will and reputation and implicated public interest in avoiding consumer deception, protecting donative intent, and ensuring that donated goods reach those for whom they are intended).

However, as to damages, the Goughary affidavit is not sufficient for the court to mathematically ascertain plaintiff's damages. See O'Neal v. Nationstar Mortg., 2009 WL 1795305, at *4 (S.D. Ohio June 23, 2009). Plaintiff seeks an award of $524,928.00, representing the sum of $28,000.00 paid to reacquire approximately 5,500 pairs of shoes from Mr. and Mrs. Re; $1,928.00 in associated expenses for traveling, shipping, etc.; $400,000.00 cited as the wholesale value of the 10,000 pairs of shoes converted by defendants but which plaintiff was unable to recover; and, $95,000.00 in attorneys' fees. While the undersigned is satisfied that Mr. Goughary, as plaintiff's Chief Financial Officer having personal knowledge

7

of plaintiff's business records (Docket Entry No. 106-1 at ¶ 2), may establish through affidavit testimony amounts spent in recovering the shoes from Mr. and Mrs. Re, see Moore v. Cycon Enterprises, Inc., 2007 WL 475202, at *8 (W.D. Mich. Feb. 9, 2007), it does not follow that his testimony is sufficient to establish the $400,000.00 wholesale value of the lost shoes, or even that such value is an appropriate measure of damages to plaintiff. The shoes were not plaintiff's commodities, and although the amended complaint contains a reference to an agreement between plaintiff and Minnetonka that the donated shoes would be distributed to people in need in Africa, not sold or transferred for value (Docket Entry No. 44 at ¶ 17), as well as the allegation that plaintiff purchased the misappropriated shoes from Mrs. Re "so that Soles4Souls could fulfill its obligations to Minnetonka..." (id. at ¶ 33), there is no allegation or showing that plaintiff was required to or did reimburse Minnetonka for the wholesale value of the lost shoes. Finally, the undersigned is not inclined to include an undifferentiated, lump sum of attorneys' fees in an award of damages upon plaintiff's victory by default.

## III. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motions for default judgment against defendants James Brooks (Docket Entry No. 106), Avie Cohen (Docket Entry No. 107), and Claude Halcomb (Docket Entry No. 114) be GRANTED IN PART as to these defendants' liability, and DENIED IN PART as to the requested award of damages. Should this recommendation for disposition be adopted and approved, it is further recommended that the matter be returned to the Magistrate Judge for further proceedings to determine appropriate damages.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 14th day of February, 2011.

                                         s/ John S. Bryant  
                                         JOHN S. BRYANT  
                                         UNITED STATES MAGISTRATE JUDGE